## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JAWANDA HARDY,**

        **Plaintiff,**

        vs.

**NANCY A. BERRYHILL,**
Acting Commissioner,
Social Security Administration,

        **Defendant.**

**Civil Action No. ADC-16-3709**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

On November 15, 2016, Jawanda Hardy ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income. *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 14 and 16), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

On October 23, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on September 1, 2011. Her claims were denied initially and upon reconsideration on April 9, 2013 and August 28, 2013, respectively. Subsequently, on September 9, 2013, Plaintiff filed a written request for a hearing and, on July 22, 2015, a video

1

hearing was held whereby Plaintiff appeared in Baltimore, Maryland and an Administrative Law Judge ("ALJ") presided over the hearing from Roanoke, Virginia. On August 14, 2015, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [("the Act")], from September 1, 2011, through the date of this decision." *See* ECF No. 11 at 35. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on September 28, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On November 16, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability application.[1] On March 24, 2017, Plaintiff filed a Motion for Summary Judgment. On May 12, 2017, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith*

---

[1] On July 7, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

*v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the

4

duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1).

5

At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2011. ECF No. 11 at 26. At step two, the ALJ found that Plaintiff had the severe impairments of "right hand injury in 2009 with history of multiple surgeries[,] borderline intellectual functioning[,] and attention deficit disorder/ attention deficit hyperactivity disorder." *Id.* The ALJ also "f[ou]nd[] that all other impairments . . . alleged and found in the record[] are non-severe, as they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations." *Id.* at 27. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff has the RFC:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] would retain the capacity for lifting/ carrying 10 pounds frequently and 20 pounds occasionally; standing/ walking for 6 hours or more in a normal 8 hour work day; sitting for 6 hours or more in a normal 8 hour work day; but, [Plaintiff] would be limited to frequent handling, fingering, and pushing pulling with the right upper extremity. [Plaintiff] would be precluded from work involving climbing ropes, ladders, or scaffolds and exposure to hazards, including machinery and heights; but, [Plaintiff] would retain the capacity to perform simple, easy to learn, routine, unskilled work activity with no interaction with the general public and no more than occasional interaction with coworkers and supervisors. [Plaintiff] would also require a static work environment with few changes in work routines and settings; and, she would require work with very little or no reading skills required.

*Id.* at 29. Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work." *Id.* at 34.

Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the [Act], from September 1, 2011, through the date of this decision." *Id.* at 35.

<h2 align="center">DISCUSSION</h2>

Plaintiff raises six allegations of error on appeal: (1) that the ALJ failed to give the opinion of Plaintiff's treating physician controlling weight without presenting contrary substantial evidence; (2) that the ALJ failed to consider Plaintiff's obesity; (3) that the ALJ improperly determined Plaintiff's credibility regarding her symptoms; (4) that the ALJ's RFC determination failed to account for Plaintiff's moderate difficulties with concentration, persistence, and pace; (5) that substantial evidence did not support the ALJ's RFC determination; and (6) that the ALJ erred by utilizing a doctor's report which was not included in the record. Each of Plaintiff's arguments lack merit and are addressed below.

**A. The ALJ properly conducted itself during step four of its sequential evaluation**.

Several of Plaintiff's allegations relate to the ALJ's evaluation of the record evidence to determine her RFC, and we will discuss them before addressing the ALJ's RFC determination, which Plaintiff also asserts is erroneous.

1. The ALJ properly weighed the testimony of Plaintiff's treating physician in making his decision.

Plaintiff argues that the ALJ failed to appropriately consider the regulatory factors for determining how much weight to give the opinion of Dr. Darryl Coleman, Plaintiff's treating physician. ECF No. 11 at 18–20. In addition, Plaintiff argues that the ALJ cannot solely use a

less restrictive opinion of a state agency medical consultant for determining that a treating doctor's opinion should be given no weight. *Id.* at 19–20.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the physician is a specialist giving an opinion about his area of specialty, and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to

the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

After reviewing Dr. Coleman's records with regard to Plaintiff, the ALJ assigned no weight to Dr. Coleman's opinion, articulating his reasoning as follows:

> Progress from PBA Associates and [Dr.] Coleman[] show conservative treatment of depression and insomnia; however, general medical and mental status examinations generally show normal findings. Moreover, Dr. Coleman advised prescribed medications for relief and routine follow up consultation. Yet, despite such benign findings, Dr. Coleman provided a medical mental assessment of [Plaintiff]'s ability to perform work related activities, citing prescribed pharmacological treatment of psychological symptoms. Dr. Coleman further opined [Plaintiff] would essentially retain little to no useful capacity for making occupational, performance, or personal/social adjustments due to history of learning problems and side effects of prescribed psychotropic medications. The undersigned assigns no weight to Dr. Coleman's opinion, as every category indicates poor or no capacity, aside from [Plaintiff]'s "fair" appearance during assessment. Such opinion by Dr. Coleman is also not supported by his own rather brief and generally benign findings during examinations; and, the opinion is also not supported by the State Agency opinion. Clinical records through 2014 from Dr. Coleman also show [Plaintiff] denied acute mental health symptoms or limitations, and mental status examinations were generally normal. Records show [Plaintiff] reported stressors related to housing uses and socioeconomic problems; however, no significant clinical findings. Additionally, records show [Plaintiff] repeatedly failed to present for routine examinations and [Plaintiff] also conceded that she has not seen Dr. Coleman in quite some time.

ECF No. 11 at 33 (record citations omitted).

The Court disagrees with Plaintiff and finds that the ALJ satisfied his burden to produce substantial evidence contradicting Dr. Coleman's opinions by drawing on the physician's own examination findings and the state agency opinion. *See* ECF No. 11 at 33. Contrary to Plaintiff's assertion that the ALJ erred by failing to consider the factors laid out in 20 C.F.R. § 404.1527(c) when determining how much weight to assign to Dr. Coleman's medical opinion,

10

the ALJ was under no obligation to specifically enumerate each of the six factors described in the Social Security regulations; the regulations require only that "good reasons" be provided for the weight given to a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2); *see also Burch v. Apfel*, 9 F.App'x 255, 259 (4th Cir. 2001) (finding no error in an ALJ's decision to accord "little weight" to a treating physician's testimony where the ALJ considered "all the pertinent [regulatory] factors" without reciting each factor). Here, the ALJ specifically explained the declining nature of the treatment relationship between Plaintiff and Dr. Coleman, why he believed that Dr. Coleman's opinions were not supported by objective medical evidence, and the inconsistencies between Dr. Coleman's and the State Agency's medical opinions. *See* ECF No. 11 at 33. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Coleman's opinion no weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record and that the ALJ did not err in according no weight to Dr. Coleman's conclusion with regard to the severity of Plaintiff's disability. *See* 20 C.F.R. § 404.1527(d).

2. The ALJ did not utilize Dr. Stephen Hirsch's report, but to any extent that he did, the ALJ committed harmless error.

Plaintiff asserts that the ALJ erred in utilizing the opinion of Dr. Hirsch without proffering it to counsel. ECF No. 14-1 at 28–29. Plaintiff further argues that the ALJ should have placed the opinion in the evidentiary record. *Id.* These contentions lack merit. The record contains no indication that the ALJ relied on Dr. Hirsch's opinion—which appears to have solely addressed Plaintiff's mental impairments. *See* ECF No. 11 at 104–05, 116–17. As discussed *supra*, the ALJ's determination of Plaintiff's RFC and disability was based on substantial evidence, and the failure to include Dr. Hirsch's opinion in the record constituted harmless error. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that

11

an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal citations and quotation marks omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

    3. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff asserts that the ALJ failed to properly evaluate her testimony with regard to "the intensity and persistence of [her] symptoms" because the ALJ considered improper factors in evaluating her credibility. ECF No. 14-1 at 22. Plaintiff's argument is unavailing.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate his allegations of pain. 20 C.F.R. § 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized his obligation to properly evaluate the credibility of Plaintiff's testimony with regard to her symptoms and the restrictions caused by her impairments in accordance with 20 C.F.R. § 404.1529. After analyzing the evidence in the record, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[2]  ECF No. 11 at 30.

While the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by her physical impairments, he pointed to several facts which were inconsistent with the Plaintiff's claims of disabling pain. The ALJ referenced Plaintiff's own testimony that she performs a variety of regular, daily activities, including watching television, maintaining personal care, making simple, easy meals, light sweeping and cleaning, using public transportation, riding with others, going outside when necessary, shopping for necessities and groceries, talking on the phone, and spending time with family despite the alleged difficulty Plaintiff claimed regarding getting along with others, counting and managing money, reading, adapting to changes, handling stress, following direction, completing tasks, and sustaining concentration. *Id.* In addition, the ALJ considered, *inter alia*, that Plaintiff worked—albeit not to the level of substantial gainful activity—after the alleged onset date of her allegedly disabling impairment as well as the degree of medical treatment required and discrepancies between Plaintiff's assertions and information contained in the documentary reports. *Id.* at 30–31. Therefore, the ALJ properly considered the evidence of record and found that the evidence contradicted Plaintiff's subjective claims regarding her impairments and their impact on her ability to work. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with

---

[2] The ALJ further explained that he did not find Plaintiff credible "given her history of incarceration for obstructing justice and association with dealers of illicit substances." ECF No. 11 at 34.

subjective complaints of disabling pain."); *Rahe v. Astrue*, 840 F.Supp.2d 1119, 1136 (N.D.Iowa 2011) (finding that substantial evidence in the record of claimant's reported activities supported the ALJ's adverse credibility determination where the claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations").

4. The ALJ properly assessed Plaintiff's RFC.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees to which the individual retains the capacity for sustained performance of the physical—mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c). Plaintiff argues that the ALJ, in determining Plaintiff's RFC, erroneously gave "some weight" to Dr. Lawrence Honick's limitations while failing to explain how the ALJ's restrictions accounted for those limitations. ECF No. 14 at 27–28. Plaintiff's argument lacks merit.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering ALJ to consider entire record); SSR 96-8p, at *2 (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Thus, the ALJ must also consider, and may rely on, the opinions of non-treating sources. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required

15

to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted)

(quoting SSR 96-8p). "Only after that may [RFC] be expressed in terms of the exertional levels

of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

During its step four evaluation, the ALJ determined that Plaintiff could "perform a range

of light work" and that she:

> would retain the capacity for lifting/ carrying 10 pounds frequently
> and 20 pounds occasionally; standing/ walking for 6 hours or more
> in a normal 8 hour work day; sitting for 6 hours or more in a
> normal 8 hour work day; but [Plaintiff] would be limited to
> frequent handling, fingering, and pushing pulling with the right
> upper extremity. [Plaintiff] would be precluded from work
> involving climbing ropes, ladders, or scaffolds and exposure to
> hazards, including machinery and heights; but [Plaintiff] would
> retain the capacity to perform simple, easy to learn, routine,
> unskilled work activity with no interaction with the general public
> and no more than occasional interaction with coworkers and
> supervisors. [Plaintiff] would also require a static work
> environment with few changes in work routines and settings; and,
> she would require work with very little or no reading skills
> required.

ECF No. 11 at 29. The ALJ referenced several sources of medical evidence regarding Plaintiff's

psychological impairments and limitations. With respect to Plaintiff's physical impairments and

limitations and her ability to perform work-related tasks, the ALJ cited to the following medical

evidence from an examining physician:

> A more recent consultative medical examination in February 2013
> by [Dr.] Honick[], indicated multiple lacerations of the right hand
> with resultant flexion contracture with the fifth finger and some
> weakness of grip and sensory deficits. However, Dr. Honick
> opined that [Plaintiff] would retain the capacity to perform some
> type of work that would require only minimal handwriting and no
> forceful gripping or fine motions with her right hand, thus
> excluding her return to work as a hairdresser. The undersigned has
> given some weight to Dr. Honick's opinion, and notes such
> manipulative limitations in the [RFC] determined herein.

. . .

17

> The record also shows no ongoing, definitive treatment of her
> subjective complaints of musculoskeletal problems associated with
> her history of right hand injury.

*Id.* at 33–34 (record citation omitted). Based on the entirety of the record, the ALJ "f[ou]nd[]" that the medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence. The above [RFC] is supported by some of [Plaintiff]'s own subjective allegations, the relatively benign objective findings both prior to and after the alleged onset date, the conservative degree of treatment [Plaintiff] has received, and the record as a whole which does not exhibit the types of medical treatment one would expect for a totally disabled individual." *Id.* at 34.

The ALJ's decision included a lengthy discussion of Plaintiff's mental and physical symptoms, and the ALJ provided sufficient reasons why the evidence, including Dr. Honick's findings, supported its determination of Plaintiff's RFC. The ALJ considered Dr. Honick's opinion regarding manipulative limitations when it stated certain limitations for Plaintiff's use of her right arm. Accordingly, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

## B. The ALJ's RFC determination properly accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace.

At step three of the sequential evaluation, the ALJ determined that "with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and further explained that Plaintiff:

> reported little capacity for counting change and managing money,
> reading, adapting to changes, handling stress, following direction,
> completing tasks, and sustaining concentration. However, despite
> such allegations, she indicated performing a wide and variant range
> of normal daily activities, without significant problems or
> limitations.

ECF No. 11 at 28 (record citation omitted). The ALJ then determined that Plaintiff had the RFC:

> to perform simple, easy to learn, routine, unskilled work activity with no interaction with the general public and no more than occasional interaction with coworkers and supervisors. [Plaintiff] would also require a static work environment with few changes in work routines and settings . . . .

*Id.* at 29. Plaintiff contends that the ALJ's RFC assessment failed to adequately account for Plaintiff's moderate difficulties in concentration, persistence, or pace in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). ECF No. 14 at 26. Defendant counters that the present case is distinguishable from *Mascio*. ECF No. 16 at 16–17. The Court agrees with Defendant.

In *Mascio*, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. Like *Mascio*, the ALJ's RFC determination included a non-exertional restriction to simple, easy to learn, routine, unskilled tasks. ECF No. 11 at 29. However, unlike *Mascio*, the ALJ's RFC assessment in this case also included additional limitations, two of which restricted Plaintiff to "no interaction with the general public and no more than occasional interaction with coworkers and supervisors" as well as "a static work environment with few changes in work routines and settings." *Id.*

While a limitation to simple, routine, repetitive tasks alone is insufficient under *Mascio*, courts in this district have uniformly found that further RFC restrictions limiting claimants to work with few changes adequately account for a claimant's moderate limitations in concentration, persistence, and pace. *See, e.g.*, *Lathan v. Comm'r of Soc. Sec. Admin.*, No. SAG-15-444, 2016 WL 1056562, at *3 (D.Md. Mar. 16, 2016) (finding no error where the AL restricted the claimant's RFC to non-production work which "should not include productions [sic] standards, judgment changes, and/or *frequent general changes to the routine work*

*environment*" (emphasis added)); *Chase v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-2961, 2016
WL 199410 at *3 (D.Md. Jan. 15, 2016) (finding no error where the ALJ restricted the
claimant's RFC to "simple, routine, and repetitive tasks, in a 'low stress' job (defined as
requiring no more than occasional decision making and *no more than occasional changes in the
work setting*), with no production rate or paced work (such as would be done on an assembly
line)" (emphasis added)); *Rayman v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL
6870053 at *3 (D.Md. Nov. 6, 2015) (finding no error where the RFC limited claimant to "a low
stress environment, such that there are *few changes in the work setting* and no fast-paced or
quota production standards" (emphasis added)).

Here, the ALJ limited Plaintiff's RFC to "simple, easy to learn, routine, unskilled work
activity with no interaction with the general public and no more than occasional interaction with
coworkers and supervisors. [Plaintiff] would also require a static work environment with few
changes in work routines and settings." ECF No. 11 at 29. Contrary to Plaintiff's assertions, the
ALJ's finding specifically addressed Plaintiff's ability to stay on task. The ALJ accounted for
Plaintiff's limitation in concentration, persistence, and pace by restricting her to work "with no
interaction with the general public and no more than occasional interaction with coworkers and
supervisors" and requiring that she have "a static work environment with few changes in work
routines and settings." *Id.* Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's
moderate limitation in concentration, persistence, and pace. Accordingly, remand based on
*Mascio* is unwarranted in this case.

## C. The ALJ's failure to consider Plaintiff's obesity is harmless.

SSR 02-1p explains the administration's policies for evaluating a claimant's obesity.
SSR 02-1p mandates that the ALJ consider both the individual and cumulative effects of obesity

at steps two through five of the five-step inquiry. SSR 02-1p, 2002 WL 628049, at *3–7 (Sept. 12, 2002); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1 ("[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC], adjudicators must consider any additional and cumulative effects of obesity."). "[An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02-1p, at *6.

At step two of Plaintiff's sequential evaluation, the ALJ indirectly determined that Plaintiff's obesity was a non-severe impairment because it had been responsive to treatment and didn't cause more than minimal vocationally relevant limitations. *See* ECF No. 11 at 26–27. In determining Plaintiff's RFC at step four of the sequential evaluation, the ALJ expressly discussed Plaintiff's obesity, stating that "[p]hysical examinations indicated no significant clinical abnormalities and her provider advised regular and daily exercise, cessation of tobacco use, dietary changes, prescribed medication, and routine follow up assessment." ECF No. 11 at 33–34. However, there was no medical evidence before the ALJ, and none in the record, which states that claimant's alleged obesity exacerbated her impairments. *See Richards v. Astrue*, No. 6:11-CV-00017, 2012 WL 5465499, at *8 (W.D.Va. July 5, 2012) (finding that the ALJ properly considered claimant's obesity in accordance with SSR 02-1p where there was no evidence in the record suggesting claimant's obesity was disabling or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation.) Thus, although the ALJ's decision did not expressly consider the effects of Plaintiff's obesity except during step four, such

21

failure constitutes harmless error. *See Ngarurih*, 371 F.3d at 190 n.8 ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal citations and quotation marks omitted)); *Allen*, 357 F.3d at 1145 (noting that the principle of harmless error applies to Social Security disability cases).

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 6 September 2017

A. David Copperthite
United States Magistrate Judge